# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABIDIN ZECIRI<br><br>    Petitioner,<br>vs.<br><br>J. FRANK LUNA,<br><br>    Respondent. | Case No. 3:08-cv-001-JWS-JDR<br><br>**FINAL RECOMMENDATION<br>REGARDING<br>AMENDED PETITION FOR RELIEF<br>PURSUANT TO 28 U.S.C. § 2254**<br><br>(Docket No. 15) |

    The Petitioner filed his Amended Petition for Relief at Docket 15. Briefing by the parties was filed at Dockets 56 and 65 with Petitioner's Reply at Docket 66. The Magistrate Judge's Initial Recommendation was filed at Docket 67. Defendant filed his objections to the Initial Recommendation at Docket 68 with Respondent's Objections at Docket 69 and Reply at Docket 70. The Magistrate Judge has reviewed the relevant pleadings and recommends the Court deny Petitioner's request for relief. The matter has been sufficiently briefed and does not

require an evidentiary hearing. This Recommendation is the Final Recommendation on this matter.

Petitioner's habeas application is based on 28 U.S.C. § 2254(d) which states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In this respect, Petitioner asserts two arguments for consideration: 1) ineffective assistance of counsel at trial in violation of the Sixth Amendment to the U.S. Constitution and 2) the denial of Mr. Zeciri's right to testify in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.[1] The Petitioner does not, however, identify how the State Courts' decisions regarding these previously asserted grounds for relief resulted in an unreasonable application of the law or a decision based on unreasonable determination of the facts. In accordance with 18

---

[1] *Petitioner's Brief on the Merits*, Docket 56, p. 1-2.

U.S.C. 2254(e), the State Courts' determinations of the facts are "to be presumed to be correct" unless the defendant is able to rebut the determinations with clear and convincing evidence.[2]

## Legal Standards

A. *Strickland* Standard

Petitioner illuminates facts in his Brief, Reply and Objections suggesting that Mr. Zeciri was deprived of effective counsel in that he needed an interpreter but was denied an interpreter by his trial counsel, and that Mr. Zeciri was denied the right to testify at his trial.[3] The standard for ineffective assistance of counsel claims comes from the case *Strickland v. Washington*.[4] *Strickland* established a two-prong test where a defendant must show not only that his attorney's representation was deficient but also that the attorney's representation prejudiced his cause.[5] The

---

[2] 28 U.S.C. § 2254 (e)(1) In a proceeding instituted by an applicant for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

[3] Docket 56 at pp. 17-20.

[4] 466 U.S. 688 (1984).

[5] *Id.* at 693.

defendant bears the burden of establishing that his attorney's performance was "so deficient that it fell below an objective standard of reasonableness."[6]

With respect to judicial scrutiny of an attorney's performance, the court must be "highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[7] This means that a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[8]

In order for a defendant to establish prejudice, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[9] A reasonable probability is one "sufficient to undermine confidence in the outcome."[10] Elaborating on the threshold, *Strickland* states:

---

[6] *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002).

[7] 466 U.S. at 689.

[8] *Id.*; *see also Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001)(Defendant "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy.").

[9] *Strickland* at 694.

[10] *Id.*

> It is not enough for [a defendant] to show that the errors had some conceivable effect on the outcome of the proceedings. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceedings.[11]

A court may first examine whether a defendant shows sufficient prejudice prior to engaging in an evaluation of whether counsel's performance was deficient.[12]

B. AEDPA Deference

Under the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), the court owes deference to the findings of the state court when conducting a federal habeas review. The Ninth Circuit Court of Appeals has defined the scope of federal habeas review of state criminal convictions stating:

> There is no plenary federal review of state criminal convictions. Habeas corpus review is subject to limitations, strengthened by the AEDPA, requiring deference to state court determinations on the merits.[13]

Accordingly, "[t]here is no plenary federal review of state criminal convictions."

Coupled with the requirements of *Strickland*, there are essentially two layers of deference. The first is deference to the State Courts' findings in

---

[11] *Id.* at 693.

[12] *Id.* at 697.

[13] *Garvin v. Farmon*, 258 F.3d 951, 958 (9th Cir. 2001); *see also Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (federal courts must defer to state court's resolution of conflicting facts when reviewing state's court application of federal law).

accordance with 28 U.S.C. 2254(e)(1). The second is deference to counsel's choices in accordance with *Strickland*.[14]

## Application of Law

In order to succeed on his federal habeas claims, Zeciri must show: 1) clear and convincing evidence that the state courts' determinations of the facts are incorrect and that either a) they resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or b) they resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding; and 2) that in accordance with *Strickland*, Ms. Fabe's representation was deficient and prejudiced Zeciri in that she did not properly provide for a translator or allow him to testify.

Zeciri's habeas petition asks the court to re-examine the record, overlooking the State Courts' findings. In *Rice v. Collins*, the Supreme Court took up an appeal from the California state courts wherein credibility judgments made by the state court was challenged.[15] On federal habeas review, the Supreme Court reversed a finding by the Ninth Circuit panel regarding credibility stating that while the decision "recited the proper standard of review [under the post-AEDPA 28 U.S.C.

---

[14] *Strickland* at 689.

[15] 546 U.S. 333, 337 (2006).

§ 2254], the panel majority improperly substituted its evaluation of the record for that of the state trial court."[16] As is clearly laid out below, the State Courts made extensive findings on the record in the state habeas case including numerous credibility findings.

Upon review of the pleadings, the Magistrate Judge believes Mr. Zeciri's rendition of the facts is one sided. The Magistrate Judge looks first at the issues surrounding the need for an interpreter at trial. Mr. Zeciri has lived in the United States since 1976.[17] Once in the United States he worked as a taxi driver, requiring the use of English when communicating with customers.[18] At Mr. Zeciri's arraignment for his assault and disorderly conduct charge related to this case, the Public Defender Agency arranged for an interpreter to be present to assist Mr. Zeciri, though Mr. Zeciri spoke some English.[19] Mr. Zeciri belabors this point in his Objections to the Initial Recommendation[20] suggesting that Ms. Fabe's dialogue with the court at a September 23, 1985 motion hearing is an admission that Mr. Zeciri needed a translator and somehow negates all of the testimony of Ms. Fabe and all

---

[16] *Id.* at 337-38.

[17] Docket 56, p. 2 (citing Tr. at 712-713).

[18] *Id.* (citing Transcript at 713-715).

[19] Docket 56, p. 4.

[20] *Petitioner's Objections to Recommendation*, Docket 68, p. 2 (citing Exc. 4, Tr. 945); see also Docket 56, p. 7 (citing Exc. 4, Tr. 945).

of the testimony given by all of the state's witnesses during the habeas evidentiary hearing. However, the defendant overlooks Judge Gleason's extensive credibility findings which the Magistrate Judge details below.

And, Mr. Zeciri encourages this court to find that the presence of interpreters at one of Mr. Zeciri's arraignment and two pretrial hearings shows he had a need for an interpreter.[21] But, Judge Gleason found that the fact that an interpreter was at those hearings early in the case did not "rebut the presumption that Ms. Fabe acted competently in concluding that Zeciri did not require an interpreter to translate for him at his trial and that her decisions in this regard were grounded in sound tactical considerations."[22]

Mr. Zeciri is not a non-English speaker. The defendant argues that he could have assisted counsel with examination and cross examination but was unable to because he did not have an interpreter. He cites this as one of the reasons Ms. Fabe was ineffective as his counsel. It is notable that the defendant is unable to give the court any specific examples, however, of how he was unable to assist Ms. Fabe due to language difficulties. The Defendant also refers to Mr. Waller, the investigator for the Public Defender, as stating that he needed an interpreter. But, Mr. Waller

---

[21] Docket 56, pp. 4, 6-7.

[22] *Respondent's Brief on the Merits*, Docket 65, p. 20 (citing Docket 18-13, at 2).

08-cv-001-TMB-JDR ZECIRI @15 FINAL RR Re 2254 Petition_mtd.wpd                    8

Case 3:08-cv-00001-JWS   Document 71   Filed 09/30/10   Page 8 of 19

testified that he never mentioned this to Ms. Fabe and stated that he would have told her and made sure a translator was present if he felt one was needed.[23] Mr. Waller also testified that Zeciri never said anything during the trial indicating that he did not understand the proceedings.[24] Mr. Zeciri further argues, in passing, that "the absence of a translator made it impossible for him to testify."[25]

The State presented testimony in the State Court proceedings from three professionals who dealt with Mr. Zeciri regarding their perception of his language abilities and, specifically, whether they believed he needed an interpreter for their interactions. Attorney Keith Bell helped Mr. Zeciri with legal matters related to bringing the defendant's wife and daughters to the United States in 1984.[26] He testified that he did not use an interpreter with the defendant and had no problem communicating with Mr. Zeciri in English.[27] Attorney Allison Mendel testified she helped Mr. Zeciri with a child custody case in 1985 or 1986 and did not have any problems communicating with him in English.[28] Vernon Caulkins, a former state

---

[23]*Id.* at p. 17 (citing Tr. 636).

[24]*Id.* at p. 21 (citing Tr. 636, 642).

[25]Docket 56, p. 11.

[26]Docket 65, p. 18 (citing 1129, 1131-32).

[27]*Id.*

[28]*Id.* at p. 17-18 (citing Tr. 1038, 1041 and 1045-46).

probation officer, testified he met with the defendant for several hours in 1986 to gather information for his pre-sentence report and had no difficulty communicating with him in English.[29] All three of those persons testified that they used interpreters when they needed them, would have used an interpreter if they felt one was necessary, but did not feel they needed an interpreter to communicate with Mr. Zeciri.[30] The testimony of Ms. Fabe, Ms. Mock and the professionals cited above was considered by the State Courts as part of the defendant's state habeas case.

Superior Court Judge Sharon Gleason and the Alaska Court of Appeals conducted extensive reviews of the record, to which this court defers.[31] Judge Gleason conducted an evidentiary hearing on Petitioner's claims. Specifically, with respect to the defendant's claims regarding a translator, Gleason found that the defendant understood the proceedings at trial without the need for an interpreter or translator.[32] She found that Zeciri failed to establish he had English language difficulties which impaired his ability to comprehend the trial proceedings.[33] Gleason

---

[29] *Id.* at p. 18 (citing Tr. 532-34, 582).

[30] *Id.* at pp. 17-18 (citing Tr. 531-32, 1036-38 and 1129).

[31] The Alaska Supreme Court denied Mr. Zeciri's post-conviction relief application without comment. In accordance with *Ylst v. Nunnemaker*, the Alaska Court of Appeals decision is the last state court decision on the merits of Zeciri's post-conviction relief application. 501 U.S. 797, 805 (1991).

[32] Docket 65, p. 3 (citing Docket 18, Exhibit 14, at 1-11).

[33] *Id.* at p. 4 (citing Docket 18, Exhibit 14, at 9).

made a finding that Zeciri had been able to communicate with his trial counsel in English, that no interpreter was needed for Ms. Fabe to communicate with her client, and that the defense team did not need an interpreter to communicate with Mr. Zeciri while preparing for and during his trial.[34]

Judge Gleason found that Zeciri understood proceedings at trial without an interpreter or translator stating that "[t]he presence of an interpreter or translator from English to Albanian and Albanian to English in court was not necessary to protect Mr. Zeciri's rights to a fair proceeding."[35]

Both courts found that Zeciri's witnesses, including the Petitioner himself, were not credible on the facts. The State's expert witness, attorney James Gilmore, testified that Ms. Fabe's decision not to hire an interpreter was reasonable and competent.[36] Further, Judge Gleason found that Mr. Gilmore's opinion was consistent with her findings based on testimony presented at the evidentiary hearing.[37]

Regarding Mr. Zeciri's testimony, on the other hand, Judge Gleason stated:

---

[34]*Id.* (citing Docket 18, Exhibit 14, p. 10).

[35]Transcript of Evidentiary Hearings, Docket 18, Exhibit 14, at p. 9.

[36]Docket 68, p. 22 (citing Tr. 974, 979-992).

[37]*Id.* (citing Docket 18, Exhibit 14, pp. 7-8.)

> I also find [Zeciri's] testimony is not worthy of belief in light of it being directly contradicted by the credible testimony of Ms. Fabe, Ms. Mock, and Mr. Waller and the other fact witnesses presented by the State at the hearing. As Mr. Zeciri himself acknowledged, this court must either accept the testimony of all those witnesses or find that all those witnesses did not tell the truth and that Mr. Zeciri should be believed. For the reasons expressed in this decision, it is those other witnesses, and not Mr. Zeciri, that this court finds to be highly credible.[38]

The defendant hired an expert, James McComas, to analyze the facts of the case and render an opinion on whether the defendant should have had an interpreter at trial. Judge Gleason chose not to accord any weight to the testimony Zeciri cites from James McComas stating that Mr. McComas' opinion was based on assumed hypothetical facts which were significantly different from the true facts of Mr. Zeciri's case.

Judge Gleason cited six questions concerning direct conflicts between Mr. Zeciri's testimony and that of Ms. Fabe. She resolved these questions on credibility issues stating:

> Ms. Fabe expressly testified in direct conflict with the testimony of Mr. Zeciri on the following six significant questions: First, Ms. Fabe testified that she never refused Mr. Zeciri's alleged requests for an interpreter. Second, Ms. Fabe testified that she never told Mr. Zeciri that cost was a concern or factor in connection with interpreter services, and she testified that such a statement would have been in direct odds with the policies of the Public

---

[38]Docket 65, p. 7 (quoting Docket No 18, Exhibit 13, p. 32).

> Defender Agency at that time. Third, Ms. Fabe testified that she made clear to Mr. Zeciri that he had an absolute right to testify at trial. Fourth, Ms. Fabe testified that Zeciri made the decision not to testify. Fifth, Ms. Fabe testified that she was certain she was able to effectively communicate with Mr. Zeciri in English through the course of her representation of him. And sixth, Mr. Zeciri never indicated to Ms. Fabe that he did not understand the pretrial or trial proceedings. On each of these questions, I find Ms. Fabe's testimony was very credible and Mr. Zeciri's testimony was not believable.[39]

Zeciri questions Ms. Fabe's decision to use the Public Defender Investigator, James Waller, in lieu of a translator. Ms. Fabe made clear in her testimony, however, that the defendant did not need a translator and the decision to have Mr. Waller sit with him was a tactical decision to encourage the jury to believe Mr. Zeciri might have language problems that would hinder his ability to clearly testify while also helping to keep the defendant calm.[40] Ms. Fabe testified that she discussed these strategies at length with the defendant and he agreed to proceed in this manner.[41] Under *Strickland*, these tactical decisions are given a wide

---

[39]*Id.* at p. 8 (quoting Docket 18, Exhibit 14, p. 2-3).

[40]Docket 56, p. 15 (citing Exc. 22); *see also* Docket 65 p. 21 (citing Tr. 897-900, 930-31, 947-48).

[41]Docket 65, p. 21 (citing Tr. 933-36, 952).

latitude.[42] It should also be noted that the defendant never asked for a translator.[43] During the course of his trial, Zeciri acknowledged to the court that he understood the proceedings.[44]

The Defendant argues in his Objections to the Initial Recommendation that the Magistrate Judge's findings regarding the need for a translator are incorrect and the comprehensive findings by the Alaska State Courts are incorrect because during the Defendant's arraignment on his murder charge, Ms. Fabe acknowledged she requested an interpreter for the Defendant and stated that "[my] client does speak some English."[45] Defendant contends that these statements contradict the entirety of Ms. Fabe's testimony and "the state's other witnesses" during the hearings before Judge Gleason.[46] But, the defendant makes these allegations without any showing of how or why he should prevail.

The Alaska Court of Appeals reviewed Judge Gleason's findings and upheld them, determining they were not erroneous.[47] Noting the deference this court

---

[42] *See Strickland*, 466 U.S. at 689; *see also Murtishaw*, 255 F.3d at 939.

[43] Docket 56, p. 14 (citing Tr. 352).

[44] Docket 65, p. 20 (citing Docket 18-13, p. 8).

[45] Docket 68, p. 2, (citing Exc. 4, Tr. 945).

[46] *Id.* at 3.

[47] Zeciri v. State, No. A-8828, 2007 WL 706635, at *3 (Alaska App. March 7, 2007). "Judge Gleason's thorough findings analyze the content of each witness's

is required to give the State Courts under the law, the defendant has a high burden of showing the State Courts erred in their findings considering the detail and thoroughness of the review. The defendant does not present any evidence to satisfy the clear and convincing standard to show that the State Courts erred in their findings on this matter.

Regarding the issue of testifying at trial, it is undisputed that a defendant has a right to testify as a witness at his own trial.[48] However, as *Murtishaw* holds, counsel is still able to make tactical decisions about trial strategy.[49] It is clear, based on Ms. Fabe's testimony, that a strategic decision was made regarding Mr. Zeciri's testimony at trial but that she communicated to Mr. Zeciri that the decision was ultimately his.[50]

With respect to the issue of testifying at trial, Judge Gleason found that Zeciri was "well aware" of his right to testify.[51] Ms. Fabe testified that she discussed

---

testimony and evaluate each witness's credibility. Ultimately, Judge Gleason found that Zeciri had not proved the factual assertions necessary to obtain post conviction relief. From our own review of the record, we uphold Judge Gleason's findings because Zeciri has not convinced us that any of Judge Gleason's findings are clearly erroneous."

[48] *See Rock v. Arkansas*, 483 U.S. 44 (1987); *see also Moses v. Payne*, 555 F.3d 742 (9th Cir. 2009).

[49] 255 F.3d at 951.

[50] Docket 65, p. 22.

[51] Docket 18-13, at 9, 11.

defendant's right to testify with him at length and that she made it clear to him that he made the decision of whether to testify. She did, however, recommend for tactical reasons that he not testify. Mr. Zeciri ultimately agreed with her and refrained from testifying at trial.[52] Ms. Fabe testified that she never told the defendant she would not allow him to testify.[53] Ms. Mock, an intern at the Public Defender's office at the time of the trial who worked on Zeciri's case, verified that Ms. Fabe thoroughly informed the defendant of his right to testify and that she was confident Zeciri understood his rights but made a decision not to testify at trial.[54]

Judge Gleason's extensive findings denied Petitioner's claims. Judge Gleason found, and the Alaska Court of Appeals affirmed, that Zeciri had not demonstrated prejudice from the purported denial of his right to testify.[55]

The Alaska Court of Appeals affirmed Judge Gleason's dismissal finding:

> Judge Gleason's thorough findings analyze the content of each witness's testimony and evaluate each witness's credibility. Ultimately, Judge Gleason found that Zeciri had not proved the factual assertions necessary to obtain post-conviction relief. From our own review of the record, we uphold Judge Gleason's findings because Zeciri has

---

[52]Docket 65, p. 22 (citing Tr. 912-916, 926).

[53]*Id.* at 22-23 (citing Tr. 915-16).

[54]*Id.* at 23 (citing Tr. 1067-69).

[55]*Id.* at p. 24.

not convinced us that any of Judge Gleason's findings are
clearly erroneous.[56]

## Conclusion

The standard of review for this court requires that the findings of the state court must be given great deference.[57] The defendant has a high burden to show those findings were erroneous, and that his claims pass the test outlined in *Strickland* for ineffective assistance of counsel. He must show that Ms. Fabe's representation was deficient and prejudiced Zeciri in that she did not properly provide for a translator or allow him to testify. It is clear from the record that Ms. Fabe was reasonable in her determination that Mr. Zeciri did not need an interpreter and reasonable in her decisions to recommend he should not testify. Her decisions are further credited by *Strickland* and the subsequent cases in that counsel is given great latitude when making tactical decisions. The State Courts found such. Mr. Zeciri has not presented any evidence, and especially not clear and convincing evidence, to demonstrate that the State Courts' decisions were erroneous in this regard.

---

[56] *Respondent's Motion to Dismiss Petitioner's Amended Habeas Petition for Failure to Exhaust*, Docket 34-6, at 24 (*Zeciri v. State*, No. A-8828, 2007 WL 706635, at *3 (Alaska App. March 7, 2007)).

[57] *Garvin v. Farmon*, 258 F.3d 951, 958 (9th Cir. 2001) ("There is no plenary federal review of state criminal convictions. Habeas corpus review is subject to limitations, strengthened by the AEDPA, requiring deference to state court determinations on the merits.").

The Magistrate Judge recommends the court find that the defendant has failed to meet his burden under *Strickland* in that the overwhelming evidence is contrary to defendant's arguments and testimony and the Magistrate Judge declines to find that Ms. Fabe's representation was deficient or that her actions prejudiced the defendant. Petitioner fails to convince the Magistrate Judge otherwise.

The Magistrate Judge recommends the court find that Judge Gleason's factual findings were supported by the evidence and were not unreasonable both in that the Petitioner was not harmed by the absence of a translator and that Petitioner was not denied his right to testify. Similarly, the review of these findings by the Alaska Court of Appeals was not unreasonable. In fact, both courts conducted extensive reviews of the record and the Magistrate Judge recommends that the court find that the defendant has not made a successful argument to show the findings were unreasonable either in their application of the law or in their interpretation of the facts under 28 U.S.C. 2254(d). The Magistrate Judge does not see any clear and convincing evidence to refute the determinations of the State Courts.

In order to succeed in his federal habeas petition, Zeciri must show by clear and convincing evidence that the State Courts' determinations of the facts are incorrect and that either a) they resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or b) they resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings. He has not given the court any evidence to show that there is an unreasonable application of clearly established Federal law. Neither has he given the court any evidence to show that the State Courts' decisions were based on an unreasonable determination of the facts. His focus on Ms. Fabe's statement regarding the fact her client spoke "some English" is misplaced. Similarly, his focus on refuted testimony as a reason to overturn all of Judge Gleason's findings on the matters is misguided.

For these reasons, the Magistrate Judge HEREBY RECOMMENDS that the Court deny petitioner's request for relief. This matter is now referred to the assigned U.S. District Judge for his determination.

DATED this <u> 30th </u> day of September, 2010, at Anchorage, Alaska.

                                           <u>/s/ John D. Roberts</u>
                                           JOHN D. ROBERTS
                                           United States Magistrate Judge